2009 BNH 030
_____

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:                                                          Bk. No. 07-11642-MWV
                                                                Chapter 11
Richard E. Schatz,
        Debtor

*Carl D. Hanson, Esq.*
LAW OFFICES OF WILLIAM HOWARD DUNN
*Attorney for Richard E. Schatz*

*John L. Allen, Esq.*
LAW OFFICES OF JOHN ALLEN & ASSOCIATES
*Attorney for Imperial Capital Bank*

## MEMORANDUM OPINION

Richard E. Schatz (the "Debtor") filed a plan of reorganization (the "Plan") on August 4, 2009 (Ct. Doc. No. 270). Class Four claims under the Plan include the secured claims of Imperial Capital Bank ("ICB"). The Debtor's Plan treats Class Four claims as impaired, but proposes to cure and reinstate ICB's claims pursuant to 11 U.S.C. § 1123(d).[1] The Plan attempts to cure and reinstate by (1) deaccelerating the obligations owed to ICB, (2) curing the arrearage by amortizing it over forty-eight months ("the life of the Plan"), and (3) by paying the claim at the original non-default contractual rate. ICB filed an objection to the Debtor's Plan (Ct. Doc. No. 280) contending that the Plan must pay ICB's claim at the default interest rate and provide for late charges, attorneys' fees and other charges allowed under the loan documents. On September 29, 2009, the Court held a hearing on confirmation and ordered the parties to submit memoranda indicating the proper interest rate to be used under § 1123(d) and the law supporting each party's position. The Court held a continued hearing on October 28, 2009, and took the matter under advisement.

## JURISDICTION

---

[1] Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§" refer to Title 11 of the United States Code, 11 U.S.C. § 101 et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## BACKGROUND

In 2005, the Debtor executed three notes and three mortgages (the "loans") to ICB as evidenced by Claim Nos. 16, 18, and 19. The loans each provide for a variable interest rate. The initial interest rate is 7.87% on Claim No. 16, and 7% on both Claim Nos. 18 and 19.[2] Each note provides that:

> At any time an Event of Default shall have occurred and be continuing and/or after maturing of the Loan, including maturity upon acceleration, the unpaid principal balance, all accrued and unpaid interest and all other amounts payable under the Note shall bear interest at the "Default Rate" set forth in this Note. The unpaid balance shall continue to bear interest after the Maturity Date at the Default Rate set forth in this Note until and including the date on which it is paid in full. The Default Rate of interest on each Note is declared to be 18% per annum.

(See the loans at ¶¶3(a) and 8.) The loans became delinquent as of April 2007. The Debtor filed a voluntary Chapter 13 petition on August 2, 2007. The case was subsequently converted to a Chapter 11 proceeding on November 27, 2007. The Debtor filed his Chapter 11 Plan on August 4, 2009, which treats ICB's claims as impaired and provides that the claims will be cured and reinstated under 11 U.S.C. § 1123(d). Specifically, the plan proposes to deaccelerate the loans, and amortize the prepetition and post-petition arrearage over a four year period at the original contractual interest rate. ICB objected and voted against the plan arguing that in order to cure under § 1123(d), the default interest rate should apply to the arrearage, and ICB's claim should include late charges, attorneys' fees, foreclosure costs and other fees provided for under the loan documents.

## DISCUSSION

---

[2] The parties agree that the loans were accelerated prior the petition date.

The Debtor does not dispute and is not contesting that ICB is an impaired creditor.  Moreover, the Debtor contends that ICB is oversecured.  Pursuant to § 1123(d), the Debtor argues that the contractual rate is the proper rate of interest to be applied to both the prepetition and post-petition arrearage, because the Plan's proposal under § 1123(d) restores the parties to their pre-default state.  On the other hand, ICB argues that the plain language of § 1123(d) requires payment according to the underlying agreement and applicable nonbankruptcy law, which in this case includes default interest and other charges and fees allowed under the loan documents and New Hampshire law.  According to ICB's calculations, the monthly payment at the contract rate for the loans total $5,558.26, while the monthly payment at the default rate for the loans total $12,212.56.

## I.   ICB IS ENTITLED TO THE PAYMENT OF INTEREST AT THE DEFAULT RATE FOR THE PREPETITION ARREARAGE

Most of the cases cited by the parties deal with § 1124(2), which is inapplicable here.  These cases discuss the merits of denying default interest to creditors proposing to "cure" and "reinstate" under § 1124(2).  Section 1124(2) considers what must occur for a class to be considered unimpaired.  That section provides:

> Except as provided in section 1123(a)(4) of this title, a class of claims or interests is impaired under a plan, unless, with respect to each claim or interest of such class, the plan notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default --
>
> > (A) cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title or of a kind that section 365(b)(2) expressly does not require to be cured . . . .

11 U.S.C. § 1124(2)(A).  Generally, a class is unimpaired if the legal, equitable and contractual rights of the class are left unaltered by the plan.  However, § 1124(2) provides a small exception to the general rule.  Section 1124(2) allows a debtor to alter the contractual rights of a class by reinstating the original maturity date of a claim while still specifying the class as unimpaired.  In order to take advantage of

§ 1124(2) and unimpair an otherwise impaired class, the plan must "cure" any defaults that have occurred. 11 U.S.C. § 1124(2). By providing for a "cure" of all defaults, the plan places the impaired creditor back into its original position. It seems then that "cure" under § 1124(2) must occur, in full, prior to or on the effective date of the plan in order to restore the parties to their pre-default state. The effect of § 1124(2) is to treat the claim as if default had not occurred, but this can only be accomplished if "cure" occurs in full and immediately. Under § 1124(2), applying the default interest rate is unnecessary because upon the effective date of the plan, the creditor is repaid for its loss during the default period. Additionally, § 1124(2) allows for payment of expenses, legal fees, and other costs. § 1124(2)(C). In essence, § 1124(2) provides for the creditor to be made whole.

In the present case, the meaning of "cure" cannot be inferred from § 1124 because ICB is not an unimpaired class. Section 1123(d) controls "cure" under a Chapter 11 plan when "cure" is to occur over the life of the Plan. The Debtor, here, is not trying to and cannot unimpair ICB. According to the Plan, ICB's legal, equitable and contractual rights are altered both as to the maturity date and the payment obligations. In such cases, the effect of § 1123(d) is to recognize that default has occurred, but propose a "cure" of the default over the life of the Plan, while reinstating the original maturity date and continuing payments at the contractual rate.

Section 1123(d) guides the Court to determine "cure" based on the underlying agreement and applicable nonbankruptcy law. While the underlying agreement between the Debtor and ICB does not explicitly provide for the amount due under "cure," it does provide for an 18% default rate of interest. Furthermore, courts have found that a creditor is entitled to interest on its claim until the filing of a bankruptcy petition at the rate provided for under the applicable agreement of nonbanruptcy law. U.S. v. Robinson (In re D.C. Sullivan & Co., Inc.), 929 F.2d 1, 2 (1st Cir. 1991). The Court also notes that New Hampshire law does not prohibit clauses providing for a default rate of interest. See Orr v. Goodwin, 953 A.2d 1190 (N.H. 2008) (defining how damage provisions are reviewed to determine enforceability).

Accordingly, the Court finds that the Debtor's Plan may "cure" and "reinstate" ICB's loans under § 1123(d) over the life of the plan, but ICB is entitled to the default interest rate on its claim for the prepetition arrearage and is entitled to prepetition attorneys' fees, expenses, and costs related to the loans. By paying the prepetition default interest and attorneys' fees, expenses, and costs under the plan, the Debtor cures the default. The Debtor was in arrears for four months prior to filing the petition. Thus, the total prepetition arrearage based on the default rate totals $48,850.24. Total prepetition attorneys' fees, expenses, and costs equal $17,091.90.

## II. ICB IS NOT ETNTITLED TO THE PAYMENT OF INTEREST AT THE DEFAULT RATE FOR THE POST-PETITION ARREARAGE

As a general rule, interest on prepetition claims stop accuring as of the date of the filing of the bankruptcy. See id.; 11 U.S.C. § 502(b)(2). The exception to the rule is that to the extent that a claim is oversecured, § 506(b) allows post-petition interest and reasonable fees, costs, and charges provided for under the loan agreement. 11 U.S.C. § 506; U.S. v. Ron Pair Enterprises, Inc., 489 U.S. 235 (1989). Though § 506 allows for a default interest rate, it is not without limitation. The allowance of interest and other charges in a bankruptcy proceeding involves a balancing of equities. See In re DeMaggio, 175 B.R. 144, 147-149 (Bankr. D.N.H. 1994). Courts have the authority to deny default interest where "the higher rate would produce an inequitable result." Bradford v. Crozier (In re Laymon), 958 F.2d 72,75 (5th Cir. 1992). This is such a case. It would be inequitable to allow interest at the default rate on the post-petition arrearage when ICB is fully protected by § 506 which allows it to recover its costs and expenses, including attorneys' fees. Furthermore, awarding ICB default interest for the post-petition arrearage would go against the Bankruptcy Code's commitment to providing debtors with a "fresh start." In accordance with § 1123(d) and § 506(b), the Court finds that the Debtor may "cure" and "reinstate" ICB's loans under 1123(d) over the life of the Plan, and ICB is not entitled to the default interest rate on its claim for post-petition arrearage. However, under § 506(b), ICB is entitled to reasonable costs and

expenses, including attorneys' fees, relating to postpetition default.

Until October 29, 2009, the Debtor had been twenty-three months in post-petition arrears. Thus, the total post-petition arrearage based on the contract rate totals $127,839.98. ICB has only provided expenses, costs, and attorneys' fees for the period ending September 1, 2009. Additionally, at the continued hearing, the Debtor indicated that he did not have a chance to review the alleged fees to determine whether and to what extent he would object. The Court orders ICB to file an up-to-date calculation of all post-petition charges, costs, expenses, and attorneys' fees believed to be due. Upon filing, the Court will determine the reasonableness of the fees under § 506, and determine what amount ICB should be awarded.

## CONCLUSION

For the reasons set out herein, the Court finds that the Debtor's Plan may "cure" and "reinstate" ICB's loans under § 1123(d) over the life of the Plan with the prepetition arrearage calculated at the default rate of interest and the post-petition arrearage calculated at the contract rate of interest. Additionally, ICB is entitled to both prepetition and post-petition costs, charges, and attorneys' fees related to the loans. The total amount of ICB's claim that can be cured and reinstated under § 1123(d) over the life of the Plan equals $193,782.12. The Court will determine the additional costs, charges, and attorneys' fees to be added to this amount upon ICB's filing of current amounts due. This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order consistent with this opinion.

DATED this 2nd day of December, 2009, at Manchester, New Hampshire.

/s/ Mark W. Vaughn
Mark W. Vaughn
Chief Judge